Case number 14-7077 et al., United States of America, ex-rail, Brian Burke and Brian Burke Realtor, Appellant v. Record Press, Inc. Mr. King for the Appellant, Mr. Loomis for the Appellate. Good morning, Your Honors, and may it please the Court, Tyler King on behalf of Appellant Brian Burke. Your Honor, there are about seven points to make regarding Appellant's brief, Mr. Burke's brief, and Mr. Burke is sitting at the table as well. First of all, the District Court, this involves obviously a False Claims Act case. The District Court did not consider the plain meaning of the contract that was at issue in the case. And instead, the District Court relied on extrinsic evidence in order to make a ruling regarding the contract and whether or not the claims submitted were false or fraudulent pursuant to that contract. Since the District Court decided to include extrinsic evidence on the contract, the District Court also should not have refused to consider testimony provided by Mr. Burke's expert, which would have also been extrinsic evidence, which the Court should have considered once the Court opened the door to extrinsic evidence. In addition, the District Court also didn't allow Mr. Burke to use all of the invoices that were issued under that contract in order to provide extrinsic evidence of what the contract meant. And on that point, it's the very important point that no invoice issued under that contract, no work performed under that contract, involved run of copies less than 10. In considering extrinsic evidence, the District Court relied on testimony from government officials about their alleged knowledge at the time of the contract, I'm sorry, at the time of trial. And this was improper because the District Court can only consider knowledge at the time that the contract is performed or, I'm sorry, that the contract is entered into or during the time of performance. This included Mr. Adderson's testimony about what someone else told him. Someone else told him someone else had told them something. And this was also Mr. Sullivan, the record press, the defendant in this case, who's alleged to have submitted false claims. That testimony, however, was clear that record press never communicated with the government at all at the time the contract was entered into and the contract performed. And therefore, the District Court's reliance on the testimony of these government officials was improper not only because their knowledge didn't purport to relate to the knowledge at the time the contract was entered into or performed, but also because the thoughts of the government officials are not relevant for purposes of determining whether or not the defendant submitted false claims. Additionally... So in order to prevail, do you agree that you would have to show that the record press false claims were made knowingly, that they knew that they were false? They could be also made recklessly, but knowingly is also the standard, but knowing within the context of the case law is meant to imply a reckless disregard as well. And the District Court based its ruling against you in part on the lack of a showing that the mental state requirement was met. Your Honor, I don't didn't read the opinion to say that the opinion was explicitly saying that it was a meeting of the minds between record press and the government, which caused the District Court to conclude that it didn't knowingly submit a false claim because of the improper application of the government's knowledge at the time of trial. The witness for the defendant also testified about this contract and its interpretation and why it was not a false claim. However, the District Court's refusal to allow all of the invoices that were issued under the contract to be admitted as evidence prevented Mr. Burke from being able to impeach Mr. Wilmont's testimony. What's the standard of review for that ruling? Whether or not the... That's a clear error, I believe, Your Honor. Refusal to introduce... Willing that you could not introduce that evidence? Your Honor, I don't want to presume to know if it's abuse of discretion or error of law, but it is an error of law to not allow Mr. Burke to introduce evidence that could be used to impeach the witness. And again, the key point is that not only did the contract... Not only did the work performed under the contract not involve a run of copies less than 10, but Mr. Wilmont, who was asserting the record press's position, indeed affirmatively stated that they had done runs of copies for less than 10. And obviously, Mr. Burke should then be able to present these invoices to him and have him testify that, in fact, what he's saying is not true, that there is not a single invoice there that allows for a running of less than 10 copies, which totally changes the entire analysis of whether or not it would be proper for them to bill in the manner that they did bill. And it shows the rest of the recklessness or willful nature of filing a false claim because you have not only Mr. Wilmont falsely stating that work was done that was not done, but you also have the context where Mr. Wilmont did not discuss any of this with the GPO prior to the time that the... At the time that the contract was made or at the time that it was being performed. And the only evidence of any meeting of the minds came simply from the government officials. And those government officials, Mr. Sullivan in particular, also did not testify to any discussions or conversations about this and about whether or not it was appropriate. Indulge me for the moment in the assumption that your argument is entirely without merit. Why should you and your client not be responsible for the $279,000 in attorney's fees and the $8,000 in costs that were incurred by Record Press? Assuming for the purpose of argument that there's absolutely no merit to these arguments, Your Honor, very simply, the defendants filed a Rule 11 motion early on in this case, claiming that this case is frivolous and it's vexatious, etc., etc. That motion was denied. So it had already been established very early on that... Failure to file a pretrial statement in a timely manner, subsequently filing a supplemental pretrial statement, failing to identify the damage theory a week before the scheduled trial date, without leave, filing an out-of-time second supplemental pretrial... Is all this false? Is any of this false? The next day, filing an emergency motion to postpone trial, and then three months after the court-ordered expert witness disclosure deadline, to which you had agreed, identifying for the first time an expert witness on damages. Your Honor, I don't think that procedurally that any of that necessarily is false in terms of when things were done. However, the issue of whether or not the claim is frivolous or vexatious is a separate issue. If there were issues associated with deadlines for filing things and needing additional time to do them, this case was not the type of case that suffered on the court's docket unnecessarily or with undue prejudice or delay to the defendant. This was a relatively straightforward scenario. There were some... That may be true of the delay. I grant you that. The necessity to respond to one after another of these pretrial statements, out-of-time filings and so on, however, is of a different character. Your Honor, regarding the pretrial statements, however, Mr. Burke, through counsel, obviously, was attempting to do as good of a job as possible to file a pretrial statement that would help the parties in going through into trial. So the fact that it was done more than once and it was done as an improvement, that shouldn't be held against Mr. Burke or counsel because those efforts were simply being done responding to whatever claim deficiencies there were. After trial, I understand you filed a motion in which you accused the GPO witness of perjury. Is that correct? Your Honor, the accusation is that you had potentially perjured testimony from Mr. Anderson because Mr. Burke... The fact of the case and the testimony of the case is that Mr. Burke called Mr. Anderson when he learned... When Mr. Burke learned of the false claim and Mr. Anderson confirmed to Mr. Burke... That's not the trial testimony. Mr. Burke testified in the trial. There was a colloquy... Pardon me, that's not... But Anderson's trial testimony is to the contrary. Exactly. Anderson testified to the contrary. So Mr. Burke's claiming that what Mr. Anderson's saying is not true because I spoke with Mr. Anderson and that's not what he said. By I, you mean your client. Yes, Your Honor. And sought to reopen discovery after trial? No, Your Honor. There was no attempt to reopen discovery after trial. However, in this scenario where record precedent also filed a counterclaim against Mr. Burke, Mr. Burke was himself a party and he was representing himself in the counterclaim. There were motions filed post-judgment which attempted to try to provide more of a record to the district court on some of these issues. But again, the motion to alter or amend was also denied. Familiar with Rule 38 of the Federal Rules of Appellate Procedure? I do not recall Rule 38 off the top of my head, Your Honor. Well, that would apply to sanctions for a frivolous appeal, which may be exactly what we have here. But I will leave the time to my colleagues. I guess you're out of time for that matter. Thank you. Good morning, Your Honors, and may it please the Court. John Lomas for the Appellee Record Press and with me at counsel's table is William O'Brien. This is a classic example of a clearly frivolous and vexatious case. After a full opportunity for discovery and a full trial, the district court found that Mr. Burke had no evidence of any fraud. And in fact, that the evidence that Mr. Burke provided in this affirmative case proved the exact opposite of what he had claimed, that Record Press had always charged the correct agreed contract price. And that's exactly what the government had repeatedly confirmed to Mr. Burke since as far back as 17 months before trial. Two consequences... Counsel, pardon me. Yes, Your Honor. This appendix is not... you're not on the appendix? That's correct. Did you file anything by way of appendix material? We offered some appendix... we selected some appendix material and sent it to Mr. Burke to include in his appendix. About what percentage of this stack would you guess that is? A very small percentage, Your Honor. Certainly the majority of that appendix are the invoices that Mr. Burke included. Very helpful. Two consequences flow from the district court's undisputable findings. First, and the conduct that Your Honor, Judge Ginsburg had enumerated earlier. First, this court should affirm the judgment in favor of Record Press and against Mr. Burke. And second, this court should reverse the district court's summary denial of Record Press' fee petition and remand with instructions that the district court award the full amount of the undisputed reasonable fees and costs that Record Press sought below. It's undisputed that the fees were reasonable. Were reasonable, yes, Your Honor. That's right, correct, Your Honor. For more than seven years, Record Press has had to defend itself against this claim that it lied and defrauded the government through overcharging for appellate briefs. But on three separate occasions, the government confirmed to Mr. Burke that there was no overcharging and no fraud. First, the government took the extraordinary step of meeting with Mr. Burke's counsel, bringing an assistant U.S. attorney and a 35-year veteran and senior GPO official who had personally investigated Mr. Burke's claim and who had a responsibility for contracting with print vendors to inform Mr. Burke's counsel that the claim had no merit. Second, the government supplied two sworn declarations from that same GPO witness who attended the meeting, Mr. Sullivan, and another 30-year GPO veteran, Mr. Edgerson, who again confirmed that Mr. Burke's claim had no merit. And third, the government brought the same two GPO witnesses to trial. They testified at trial again with the assistant U.S. attorney there on their behalf  and that Record Press had always charged the correct agreed price. In fact, Mr. Sullivan testified that the government was fully satisfied with Record Press' performance and continued to renew their contract each year since even after Mr. Burke's claim. So it's unthinkable that Record Press could be accused of a false claim. And as Judge Ginsburg, you pointed out, the conduct continued after trial when Mr. Burke filed a series of motions accusing the GPO witness of perjury, accusing Record Press of conspiring, the GPO and Record Press of conspiring to create some sort of bid-rigging scam. Counsel said he didn't seek to reopen Discovery. Your Honor, in the motion, there are requests for new interrogatories and to seek testimony from three witnesses, a witness from Record Press and witnesses from the government. Is that the post-trial motion? That's in one of the post-trial motions, yes, Your Honor. And there is a request for, yes, interrogatories. It's under the heading of interrogatories. Burke's counsel and his counsel's continued pursuit of this claim in the face of the repeated confirmation from the government it had no merit falls squarely within the FCA's fee-shifting provision in Section 1927. In summarily dismissing Record Press' fee motion as a wholly new course of litigation, the district court mistakenly failed to recognize that the very false claims that Keaton provision providing for Mr. Burke to file his claim provided Record Press as the prevailing party the right to seek fees in this type of case. And certainly Federal Rule 54 required Record Press to do so with a post-trial motion within 14 days of judgment in the same litigation. This court should reverse that decision, and because, as Judge Ginsburg noted, there is no dispute below concerning the reasonableness of Record Press' fees, this court should instruct the district court. We would request the district court instruct the district court to enter a ward in the full amount of those fees and hold Mr. Burke and his counsel jointly in severing the lawsuit. So typically in a fee situation, I take it that the district court would issue findings of fact that form the predicate for the award of fees and then conclusions of law that justify the fees. Yes, Your Honor. And in this instance, I think when the district court entered a finding that Mr. Burke had no evidence of any fraud, that's the sign that there was absolutely no merit to his claim necessarily means by definition that it's clearly frivolous, particularly given the record evidence and the history here of the government's repeated extraordinary steps to confirm to Mr. Burke that there was no merit to his claim. I mean, bringing the, again, meeting with his counsel 17 months before trial and bringing a USA and a senior GPO official to confirm that it had no merit is an extraordinary step. And then, again, submitting two declarations in the case and bringing witnesses to trial again to confirm it had no merit. I ask this question just because I don't know the answer, but do you have cases in which an appellate court in a circumstance like this where the district court didn't make findings because it went the other way on fees than reversed with instructions to award fees? Without findings, we did not see a case where the district court had not entered specific findings in person. I'm not saying that that can't happen. I'm just wondering if there's any. No, we did not find any on that run. But, again, I think our argument would be that the finding of no evidence would be sufficient to establish that it's clearly frivolous. Just responding quickly to a couple of the points that Mr. Burke made, on the invoice issue, the entire assertion that there are fewer than ten copies, first setting aside the fact that it's irrelevant to the merits, it's an incorrect assertion. There are run invoices for copies of fewer than one run. We can point to pages 457 to 461, 463, 498, 504, and 505 of the appendix. That's where Burke's second supplemental pretrial statement has a chart of all the invoices for which he claimed damages. And on those pages, there are the reflex invoices of runs as few as eight and one copy. And the stack of invoices, if you look in the appendix, the large appendix there, on pages 1104 to 1120, you'll see a gap in the base numbers of those appendix where the appendix of fewer than ten runs were removed from the stack of invoices that Record Press produced in the case. And second, on the fact of the meeting of the minds, whether it came before or after trial, I mean, the evidence is clear that the government supplied information to Record Press through the IFB before it was entered into that showed how the price term applied and both parties confirmed that they understood that before entering into the contract. And finally, on the Rule 11 issue, I'll just point out that that motion was denied without prejudice by the district court. So it was not denied with prejudice, and it was in a minute order with no comment. So we would ask again that the district court affirm judgment in favor of Record Press and against Burke's claim and reverse the district court's decision to deny fees and remand with instructions to award the full amount sought and hold Mr. Burke and his counsel jointly and separately liable. Thank you, Your Honors. Mr. King, we'll give you one minute. Your Honor, regarding the statement that since the district court found no evidence, that that clearly indicates that this claim is meritless and frivolous, again, that's Mr. Burke's whole argument on appeal, is that the district court did not find the evidence that he had provided during the trial and that it was an error for the district court judge and or an abuse of discretion for the district court judge not to have allowed that evidence in and therefore, after not allowing the evidence in, not applying the evidence to the case and not making findings that a claim was false. This is a relatively unique case that arose here because Mr. Burke didn't work for Record Press. Mr. Burke had received a bill to pay costs for something that the United States government had paid for because he was the unsuccessful litigant in an appeal. And because he's a conscientious person who wanted to make sure that the government wasn't being defrauded, he followed up on that invoice. He discovered through his investigation that the invoice had overcharged for a particular line item in this contract. And to have a precedent that says that if you're unsuccessful in trying to assert these arguments and if you are believing in this statute that prevents the government from being defrauded, then it's important not to essentially sanction a litigant and counsel for simply trying to get a day in court. Now, after your day in court, in your post-trial motion, as I recall, that's when you raised a Sherman Act claim. A what act claim, Your Honor? Sherman Act antitrust claim. Your Honor, it was important for, in terms of the pre-trial motion, to try to put as much on the table as possible. Pre-trial, this is post-trial. I'm sorry, Your Honor, post-trial. In terms of the post-trial motion, this was essentially the litigant's last opportunity to ask the court to consider facts and laws that the litigants believe have not been applied, either at all. But you raised it earlier, right? You didn't make a Sherman Act claim until after trial. No, Your Honor. No, meaning you did not. It was not raised. No, until after trial. It was not raised until after trial, Your Honor. Yes. Is that the subject on which you proposed interrogatories? Your Honor, as I said before, I worked together with Mr. Burke on this phase of the trial because Mr. Burke was also a litigant as a representative himself pro se in the counterclaim. Mr. Burke and I worked together on those motions, and I don't specifically recall standing here whether or not discovery was related to that act or not. Okay. But the idea was that this was trying to put as much strength and power behind the post-trial motion as possible. Thank you. Case is submitted.
judges: Srinivasan, Williams, Ginsburg